# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEIRUS INNOVATIVE ACCESSORIES, INC., a Utah corporation,<br><br>Plaintiff / Counterclaim-Defendant,<br><br>vs.<br><br>CABELA'S INC., a Delaware corporation, and ROSS GLOVE COMPANY, a Wisconsin corporation,<br><br>Defendant / Counterclaim-Plaintiff. | CASE NO. 09-CV-102 H (WMC)<br><br>**ORDER**<br><br>**(1) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PATENT NON-INFRINGEMENT OF U.S. PATENT NO. D510,652;**<br><br>**(2) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PATENT NON-INFRINGEMENT OF U.S. PATENT NO. 6,272,690; AND**<br><br>**(3) DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PATENT NON-INFRINGEMENT OF U.S. PATENT NO. 5,214,804.** |

On September 2, 2011, Cabela's Inc. ("Cabela's") filed its motion for summary judgment of patent non-infringement. (Doc. No. 279.) On the same day, Ross Glove Company ("Ross") filed a notice of joinder. (Doc. No. 284.) On October 3, 2011, Seirus Innovative Accessories, Inc. ("Seirus") filed its response in opposition regarding Cabela's and Ross's (collectively "Defendants") motion for summary judgment. (Doc. No. 351.) On

1  October 7, 2011, Defendants filed a response in support of their motion. (Doc. No. 369.) On
2  October 17, 2011, and October 24, 2011, the Court held a hearing on Defendants' motion for
3  summary judgment. Matthew Murphey and Paul McGowan appeared for Seirus. Nicole
4  Murray, Callie Bjurstrom, and Gregory Sitrick appeared for Cabela's. Duane Horning, Justin
5  Walker, and Cynthia Iliff appeared for Ross.

6  For the following reasons, the Court grants Defendants' motion for summary judgment
7  on non-infringement of U.S. Patent No. D510,652; grants Defendants' motion for summary
8  judgment on U.S. Patent No. 6,272,690; and denies Defendants' motion for summary judgment
9  on U.S. Patent No. 5,214,804.

## Background

11  On January 20, 2009, Seirus commenced this action by filing a complaint alleging that
12  Defendants' accused products infringe one or more of the following patents: U.S. Patent Nos.
13  6,272,690 ("the '690 patent"); 5,214,804 ("the '804 patent"); and D510,652 ("the 'D652
14  patent"). (Doc. No. 8 at 4-6.) In response, Cabela's filed its answer and asserted
15  counterclaims along with a number of affirmative defenses, including patent non-infringement.
16  (Doc. No. 108 at 11-13.) The Court issued a claim construction order on February 4, 2011.
17  (Doc. No. 139.)

**A. The 'D652 Patent**

19  The 'D652 patent was filed on October 31, 2003, and issued on October 18, 2005. (The
20  'D652 patent.) The design patent includes a series of eight drawings and is directed to the
21  ornamental design of a neck protector. (Id.)



**B. The '690 Patent**

The '690 patent was filed on March 18, 1996, and issued on August 14, 2001. (The '690 patent.) It contains a single claim directed to a "combination of a sport goggle and an article of protective clothing." (Id.) The article of clothing includes a mask member for placement about a user's mouth and nose, a head member connected to the mask member for placement about a user's head, and a scarf portion for placement about the user's neck. (Id.)



**C. The '804 Patent**

The '804 patent was filed on January 27, 1992, and issued on June 1, 1993. (The '804 patent.) Two independent claims are directed to an article of clothing that includes a mask portion to be worn about a user's mouth and nose, and a scarf portion to be worn about a user's neck. A "securing means" secures the article of clothing about a user's head. (Id.)


Fig. 1


**Fig. 2**

### I. Summary Judgment Standard

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Freeman v. Arpaio, 125 F.3d 732 (9th Cir.1997). A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The moving party can present evidence that negates an essential element of the nonmoving party's case or demonstrate that the nonmoving party failed to establish an essential element of the nonmoving party's case on which the nonmoving party bears the burden of proving at trial. Id. at 322-23. Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the nonmoving party to set forth facts showing that a genuine issue of disputed fact remains. Celotex, 477 U.S. at 322. The nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." Anderson, 477 U.S. at 256.

When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The Court does not make credibility determinations with respect to evidence offered. See T.W. Elec., 809 F.2d at 630-31 (citing Matsushita, 475 U.S. at 587). Summary judgment is therefore not appropriate "where contradictory inferences may reasonably be drawn from undisputed evidentiary facts." Hollingsworth Solderless Terminal Co. v. Turley, 622 F.2d 1324, 1335 (9th Cir. 1980).

### II. Patent Infringement Standards

**A. Design Patents**

A determination of design patent infringement involves a two step analysis. First, the

1  claim must be properly construed to determine its meaning and scope. Secondly, the properly
2  construed claim must be compared to the accused design to determine whether there has been
3  infringement. Elmer v. ICC Fabricating, Inc., 67 F.3d 1571, 1577 (Fed. Cir. 1995). Regarding
4  the first step, "the scope of the claim must be construed in order to identify the non-functional
5  [*i.e.,* ornamental] aspects of the design as shown in the patent" when the design contains both
6  functional and non-functional elements. Egyptian Goddess, Inc. v. Swisa, Inc., 543 F.3d 665,
7  608 (Fed. Cir. 2008) (quoting Oddzon Prods.,Inc. v. Just Toys, Inc., 122 F.3d 1396, 1405 (Fed.
8  Cir. 1997)).

9  The second step requires that the patentee establish that an ordinary observer, familiar
10 with the prior art designs, would be deceived into believing the accused product is the same
11 as the patented product. Egyptian Goddess, 543 F.3d at 672; Richardson v. Stanley Works,
12 Inc., 597 F.3d 1288, 1295 (Fed. Cir. 2010). The ordinary observer "must be deceived by the
13 features common to the claimed and accused designs that are ornamental, not functional."
14 Unidynamics Corp. v. Automatic Products Intern., 157 F.3d 1311, 1323 (Fed. Cir. 1998);
15 Egyptian Goddess, Inc., 543 F.3d at 680. The ordinary observer must "view the differences
16 between the patented design and the accused product in the context of the prior art" such that
17 "the attention of the hypothetical ordinary observer will be drawn to those aspects of the
18 claimed design that differ from the prior art." Egyptian Goddess, Inc., 543 F.3d at 676.
19 Design patent infringement is a question of fact. Richardson, 597 F.3d at 1295.

20 **B.  Utility Patents**

21 Literal infringement of a claim of a utility patent is established when it is determined
22 that "every limitation in the claim is literally met by the accused device." Kahn v. General
23 Motors Corp., 135 F.3d 1472, 1476 (Fed. Cir. 1998). An accused device "that does not
24 literally infringe upon the express terms of a patent claim may nonetheless be found to infringe
25 if there is 'equivalence' between the elements of the accused product or process and the
26 claimed elements of the patented invention." Warner-Jenkinson Co. v. Hilton Davis Chem.
27 Co., 520 U.S. 17, 17 (1997). "In determining whether there has been infringement, a two step
28 analysis is required. First, the claims must be correctly construed to determine the scope of the

1  claims. Second, the claims must be compared to the accused device." Kahn, 135 F.3d at 1476.
2  In a motion for summary judgment of non-infringement, "[t]he movant bears the burden of
3  demonstrating absence of all genuine issues of material fact, the district court must view the
4  evidence in a light most favorable to the nonmovant and draw all reasonable inferences in its
5  favor, and must resolve all doubt over factual issues in favor of the party opposing summary
6  judgment." SRI Int'l. v. Matsushita Elec. Corp., 775 F.2d 1107, 1116 (Fed. Cir. 1985). Thus,
7  to prevail against DR Systems' motion for summary judgment, Kodak needs to show that a
8  genuine issue of material fact exists as to whether the accused device infringes one or more
9  claims of the '811 patent. Id.

### III. Discussion

**A. 'D652 Patent**

In order to establish infringement of a design patent, a patentee must establish that an ordinary observer, familiar with the prior art designs, would be deceived into believing the accused product is the same as the patented product. Egyptian Goddess, 543 F. 3d at 672; Richardson, 597 F.3d at 1295. Design patent infringement is a question of fact. Richardson, 597 F.3d at 1295. Defendants are required to establish that there is no issue of material fact as to whether the accused product infringes the 'D652 patent. Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

The 'D652 patent includes eight figures directed to the ornamental design of a neck protector. This Court construed the design patent to claim "[t]he ornamental design for a neck protector as reflected in Figures 1-8, depicting a vertical zipper." (Doc. No. 139 at 15.) The Court also noted that the design patent is limited to the designs depicted in the figures with vertical zippers, in part because of prior art U.S. Patent No. 6,397,403 ("the '403 patent") disclosing a neck garment with an angled zipper. (Id. at 16.)

The accused product is Cabela's Zip Neck Gaiter (the "Neck Gaiter"). The Neck Gaiter has a diagonal zipper and includes borders along its top and bottom edges. The '403 patent similarly has a diagonal zipper and borders along its top and bottom edges. (The '403 patent, Fig. 2.) Representative figures of the 'D652 patent, the Neck Gaiter, and the '403 patent are

pictured below:

  

**'D652 Patent**                **Neck Gaiter**                **'403 Patent**

Under the standard of Egyptian Goddess, would an ordinary observer, familiar with the '403 patent, be deceived into believing the Neck Gaiter is the same as the neck warmer design depicted in the 'D652 patent? Defendants argue that the designs of the Neck Gaiter and the 'D652 patent do not appear substantially the same to an ordinary observer because the Neck Gaiter has a diagonal zipper and borders along its edges. (Doc. No. 279 at 9.) Seirus argues that infringement is a disputed question of fact. (Doc. No. 351 at 4 and 11.)

In light of the similarities between the prior art neck garment of the '403 patent and the accused Neck Gaiter, this Court concludes that no reasonable fact-finder could find that Seirus has met its burden of showing by a preponderance of the evidence that an ordinary observer, taking into account the similarities of the prior art, would believe the accused Neck Gaiter to be the same as the design in the 'D652 patent. Both the Neck Gaiter and the '403 patent have a diagonal zipper. In contrast, the 'D652 patent is limited to a design with a vertical zipper. Seirus claims that Cabela's ignores the 'D652 patent as a whole and unduly places the emphasis on this Court's claim construction pertaining to designs with zippers. However, the Federal Circuit noted that, "[w]hen the differences between the claimed and accused design are viewed in light of the prior art, the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that differ from the prior art." Egyptian Goddess, 543 F. 3d at 676. Here, an ordinary observer familiar with the prior art would be drawn to the difference in the two zippers, and would be able distinguish the Neck Gaiter from the design of the 'D652 Patent. The Court concludes that there is no triable issue of material fact applying the standards in Egyptian Goddess to these facts. Accordingly, the Court grants

1  Defendants' summary judgment motion and concludes that the Neck Gaiter does not infringe
2  the 'D652 patent.

## B. '690 Patent

Defendants are accused of infringing the '690 patent based on Cabela's Soft Shell product. (Doc. No. 8 at 3.) The '690 patent claims a head member that is "formed of closely woven pliable material" and a scarf portion "unitarily formed to be an extension of the head member." (The '690 patent, claim 1.) Further, the Court construed the claim of the '690 patent to require that the claimed sports goggles "must be provided in combination with an article of clothing." (Doc. No. 139 at 12.) The Soft Shell product is a balaclava head garment for covering a user's face, including openings for the user's eyes and nose and a portion to cover the user's neck. The product is made of various pieces of fabric sewn together. There is no indication that the Soft Shell product is packaged or necessarily sold in combination with sports goggles.

### 1. Closely Woven Material

The parties dispute whether the head member of the Soft Shell product is made of closely woven material as claimed in the '690 patent, or if is made of a knit material. (Doc. No. 351 at 14-16.) Cabela's expert and Ross' Vice President are of the opinion that the Soft Shell product is made of a knitted fabric, not a woven fabric.[1] (Doc. 279, Exs. C and K.) Mr. Edwards, a principal of Seirus, disagrees. He concludes that it is too difficult to draw the distinction between woven and knitted materials because manufacturing techniques oftentimes produce knitted materials having characteristics of woven materials, and vice versa. (Edwards Declaration, Doc. No. 351.)

The language in the '690 patent "closely woven pliable material" does not necessarily exclude some knitted products that have characteristics of "closely woven pliable materials." Literal infringement of a claim of a utility patent is established when it is determined that "every limitation in the claim is literally met by the accused device." Kahn v. General Motors

---

[1] Cabela's expert treated the terms inconsistently in his invalidity and non-infringement analyses. (Doc. No. 351, Ex. 5. at 48-50.)

- 8 -                                                                                                                09cv102

1  Corp., 135 F.3d 1472, 1476 (Fed. Cir. 1998). An accused device "that does not literally
2  infringe upon the express terms of a patent claim may nonetheless be found to infringe if there
3  is 'equivalence' between the elements of the accused product or process and the claimed
4  elements of the patented invention." Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520
5  U.S. 17, 17 (1997). There is a factual dispute as to whether the Soft Shell product is made of
6  closely woven pliable or knitted material. Drawing all factual inferences in the light most
7  favorable to Seirus, the Court concludes that there is an issue of fact whether the Soft Shell
8  product meets the '690 claim element of closely woven pliable material literally or under the
9  doctrine of equivalents.

### 2. Unitarily Formed

11  The scarf portion of the Soft Shell product is composed of four separate panels of
12  material that are variously attached to the head piece. The '690 patent claims a scarf portion
13  that is "unitarily formed to be an extension of the head member." The parties dispute whether
14  the term "unitarily formed" requires the scarf portion and head member of the Soft Shell
15  product to be made of a single panel of fabric.

16  The Court in Seirus Innovative Accessories v. Bula America ("Bula") construed the
17  scarf member of the '690 patent to be "unitarily formed with the head member as one piece"
18  because the '690 patent discloses a separately formed scarf member but does not claim it
19  (Case No. 08-CV-2234, Doc. No. 67 at 25.) The parties in this case stipulated to adopt and be
20  bound by the claim construction from Bula. (Doc. No. 279 at 13.)

21  Nothing in this Court's claim construction orders, or in the '690 patent, requires the
22  scarf portion and the head member to be one single panel of fabric. The claims only require
23  the scarf portion be unitarily formed "to be an extension of the head member." The scarf
24  portion of the Soft Shell product is sewn or stitched to the head portion, and is therefore an
25  "extension" of the head member. The fact that the scarf portion is sewn or stitched to the head
26  portion does not necessarily make it a separately formed scarf member. The '690 patent
27  discusses a separately formed scarf member as being removable from the head member, such
28  as using zippers or hooks. (The '690 patent, col. 5 ll:53-57.) A wearer of the Soft Shell

1  product would not be able to readily remove the scarf portion from the head portion.  Drawing
2  all factual inferences in the light most favorable to Seirus, the Court concludes that there is an
3  issue of fact whether the Soft Shell product infringes the '690 patent.

### 3. Sports Goggles

The Court's claim construction requires that the sports goggles "must be provided in combination with an article of clothing." (Doc. No. 139 at 12.)  Literal infringement of a claim of a utility patent is established when "every limitation in the claim is literally met by the accused device." Kahn, 135 F.3d at 1476.  Here, Defendants' Soft Shell product lacks the sports goggles required by the claim of the '690 patent as construed by this Court.  Therefore, the Soft Shell product does not literally infringe the '690 patent.

An accused device "that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." Warner-Jenkinson, 520 U.S. at 17.  However, "the use of the doctrine of equivalents to establish infringement is limited by the doctrine of prosecution history estoppel." Voda v. Cordis Corp., 536 F. 3d 1311, 1324-25 (Fed. Cir. 2008).  Prosecution history estoppel operates by "barring an equivalents argument for subject matter relinquished when a patent claim is narrowed during prosecution." Id.

Sports goggles in combination with the protective clothing were not initially claimed in the '690 patent application.  (Doc. No. 279, Ex. F at 147.)  During prosecution of the patent application, the applicants added a new claim with a structural limitation of sports goggles in order to overcome the references cited by the patent examiner.  (Id. at 164 and 173.)  Applicants specifically stated, "[the prior art] Ensten does not teach such a combination; nor does he suggest it . . . Carey teaches use of sport goggles but not positionable as defined in claim 24 . . . [t]hus, claim 24 now defines over the art."  (Id. at 173.)  In response, the patent examiner indicated that claim 24 was allowable as long as 35 U.S.C. 112 issues were corrected.  (Id. At 183.)  Because the amendment adding sports goggles in combination with the article of protecting clothing was made for purposes of patentability, prosecution history estoppel bars

1  Defendants from claiming that protective clothing without sports goggles is an equivalent to its
2  claimed invention.

3  The claimed sports goggles must be provided in combination with the article of clothing.
4  Plaintiff has cited no authority to hold Defendants liable for infringement simply because a
5  purchaser bought the Soft Shell product and goggles at the same time. There is no showing in
6  the evidence that the purchaser would even combine the products after purchase. The Court
7  concludes that the separate sale of the Soft Shell product and sports goggles does not constitute
8  infringement of the '690 patent. Accordingly, the Court grants Defendants' summary judgment
9  motion and concludes that the Soft Shell product does not infringe the '690 patent.

**C. '804 Patent**

Defendants move for summary judgment of non-infringement of the '804 patent on the grounds that 1) the scarf portion of the Soft Shell product does not have a single panel of fabric as required by the claimed scarf "member" and 2) the lower edge and the upper edge of the Soft Shell product do not intersect "in the area of the temples." (Doc. No. 279 at 19, 22.)

**1. Member**

The Soft Shell product includes four separate panels of material that are sewn or stitched together to form a scarf portion that surrounds a wearer's neck. Defendants contend that because the '804 patent uses the term "member," the claimed scarf member requires a single panel of fabric. (Doc. No. 279 at 19.) Defendants point to the '804 patent specification which allegedly uses the term "member" when discussing individual panels of fabric and the term "portion" when referring to specific parts within a single fabric piece. (Id. at 20.)

The specification of the '804 patent refers to various "members" when describing the article of clothing depicted in Figures 1 and 2. (The '804 patent, col. 2 ll:58-66.) For instance, the specification recites, "[t]he mask member 12 is attached to and combined with the scarf member 14." (Id.) The Federal Circuit has warned against limiting the scope of the claims to the embodiments disclosed in the specification. Phillips v. AWH Corp., 415 F.3d 1303, 1323 (Fed. Cir. 2005). While the figure appears to depict a single panel making up the scarf member, there is nothing in the claims explicitly limiting the scarf member to a single piece of fabric.

1 Furthermore, an embodiment of the "mask member 12" is actually described as two panels or
2 sides being stitched together. (The '804 patent, Fig. 1 and col. 5 ll:45-54.) Thus, Defendants'
3 argument that the term "member" in the specification only refers to a single panel of fabric fails.
4   Neither this Court's claim construction, nor the claims themselves, limit the claims to
5 a scarf member requiring a single panel of fabric. As a result, there remains an issue of material
6 fact as to whether the claims of the '804 patent read on the scarf portion of Defendants' Soft
7 Shell product.

**2. Intersection of Upper and Lower Edge**

9   Defendants argue that the lower edge and the upper edge of the accused infringing
10 device, the Soft Shell product, do not intersect in the area of the temples. (Doc. No. 279 at 19,
11 22.) Both independent claims of the '804 patent claims require, "wherein said upper edge [of
12 the mask member] extends rearward1y to the area of the temples, and wherein said lower edge
13 [of the mask member] is arcuate and intersects said upper edge in the area of the temples." This
14 Court further construed the claim such that "the lower edge does not extend higher than the
15 user's temple area." (Doc. No. 139 at 7.) The Soft Shell product includes an upper edge that
16 extends along the lower part of a wearer's eye socket area. The Soft Shell product also includes
17 a lower part that extends under the wearer's chin and upward toward the upper part. A seam
18 extends from the upper part and meets the lower part as the lower part extends upward.
19   Representative figures of the '804 patent and the Soft Shell product are pictured below:




**804 Patent**                                **Soft Shell**

28   The parties dispute whether the lower part of the Soft Shell product intersects the upper

1  part as required by the claim. Cabela's argues that because the upper edge of the Soft Shell
2  product terminates before intersecting the lower edge, it does not meet the limitations of the
3  claims. However, the term "intersects" is not specifically defined in the specification, nor is it
4  further limited in any of the claims. The claims and specification do not specify how the upper
5  and lower edges intersect, nor do they indicate the exact point where the edges intersect. For
6  instance, intersects could reasonably mean intersecting at an axis of the upper edge.

7  Literal infringement of a utility patent claim is established when it is determined that
8  "every limitation in the claim is literally met by the accused device." Kahn, 135 F.3d at 1476.
9  Here, there is a disputed fact as to whether the claimed scarf member reads on the scarf portion
10 of Defendants' Soft Shell product, and whether the lower part of the Soft Shell product
11 "intersects" the upper part. Viewing the evidence in light most favorable to Seirus, and drawing
12 all reasonable inferences in its favor, the Court denies Defendants' summary judgment motion
13 of non-infringement of the '804 patent.

## Conclusion

For the foregoing reasons, the Court:

(1) GRANTS Defendants' motion for summary judgment on Defendants' patent non-infringement regarding the 'D652 patent;

(2) GRANTS Defendants' motion for summary judgment on Defendants' patent non-infringement regarding the '609 patent; and

(3) DENIES Defendants' motion for summary judgment on Defendants' patent non-infringement regarding the '804 patent.

**IT IS SO ORDERED.**

DATED: October 25, 2011

_MARILYN L. HUFF, District Judge_
UNITED STATES DISTRICT COURT